**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

**United States of America,**

       **Plaintiff,**

**v.**                                          **Case No. 13-20079-JWL**

**Jesus Enrique Moreno,**

       **Defendant.**

**MEMORANDUM & ORDER**

In May 2014, defendant Jesus Enrique Moreno pled guilty to possessing with intent to distribute more than 500 grams of methamphetamine.  In February 2015, the judge assigned to the case at the time sentenced defendant to 168 months imprisonment.  He is presently incarcerated at Texarkana FCI and his projected release date is April 3, 2026.  This matter is now before the court on defendant's motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. 65).  As will be explained, the motion is denied.

*Exhaustion*

18 U.S.C. 3582(c)(1)(A) allows a defendant to bring a motion for reduction of a term of imprisonment "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See id*.

It is undisputed that defendant submitted a request for compassionate release to the warden of his facility in May 2020.  In that request, which defendant has attached to his motion, defendant sought release "in light of the severe medical risks posed to him at this facility and given the fact that I am in a 'high risk' category for contracting the virus in the conditions of this facility and due to medical issues."  The warden denied defendant's request.  In doing so, the warden acknowledged that defendant was being treated for medical conditions but stated that the facility could adequately manage defendant's medical needs and noted that defendant's medical status was"stable."  In his motion for compassionate release, defendant argues that extraordinary and compelling reasons for immediate release from prison exist because his medical conditions (psoriasis, ulcerative colitis, early exposure to tuberculosis, and the presence of a ventriculoperitoneal (VP) shunt) create an increased risk of serious harm or death from the ongoing coronavirus pandemic.  The government asserts that defendant's motion must be dismissed for lack of jurisdiction because his request did not reference any medical conditions whatsoever, let alone the medical conditions now identified in his motion.  The court disagrees.

The court recently addressed a similar issue in *United States v. Burgoon*, 2020 WL 7396914, at *2-3 (D. Kan. Dec. 17, 2020).  In that case, the court began its discussion by first distinguishing its decision in *United States v. Rucker*, 2020 WL 4365544, at *1 (D. Kan. July 30, 2020).  In *Rucker*, the defendant included in his request to the warden that he suffered from "a set of medical conditions," including two particular conditions, that made him especially vulnerable to harm from COVID-19.  *See id*.  The defendant, then, clearly relied on his medical conditions in making his request and identified specific health concerns in that request.  *See id*.  Because the defendant had articulated certain medical conditions in his request, the court rejected the

government's argument that defendant, in his motion to the court, could not rely on additional medical conditions not specifically identified in his request to the warden. *See id.*; *accord United States v. Jeffers*, 2020 WL 43100842, at *5 (N.D. Iowa June 11, 2020) (rejecting failure-to-exhaust argument where defendant mentioned in his request that he required "chronic care" in light of high blood pressure and anxiety and relied on diabetes for the first time in his motion; BOP on notice that defendant was seeking release in light of his health).

By contrast, in *Burgoon*, the defendant did not mention any medical conditions or underlying health issues in her request. *Burgoon*, 2020 WL 7396914, at *1. Presented with those facts, the court recognized that other courts faced with similar facts have come to different conclusions on the exhaustion question. *Compare United States v. Ethridge*, 2020 WL 5531518, at *2 (E.D. Mich. Sept. 15, 2020) (rejecting failure-to-exhaust argument despite the fact that defendant did not identify any medical condition as a basis for release in request to warden and only relied on general COVID-19 concerns; defendant could rely on obesity in motion to the court because he identified the COVID-19 pandemic as a basis for the request and it remained the basis of his motion) *and United States v. Haynes*, 2020 WL 4696601, at *2 (E.D. Mich. Aug. 13, 2020) (rejecting failure-to-exhaust argument where defendant did not specify COVID-19 or any medical condition in his request; court could consider obesity and COVID-19 concerns because "it can be presumed that the BOP was well-aware of at least Defendant's obesity and high blood pressure when his request was denied") *with United States v. Alderson*, 2020 WL 4696599, at *2 (E.D. Mich. Aug. 13, 2020) (dismissing motion for lack of jurisdiction where defendant only referenced COVID-19 pandemic generally in request and cited no medical condition; to hold otherwise would "undermine the statutory scheme of administrative exhaustion that Congress purposefully

designed") *and United States v. McNair*, 2020 WL 5036201, at * (D.N.J. Aug. 26, 2020) (defendant did not exhaust administrative remedies where request mentioned good behavior and rehabilitation but no medical condition and motion to court was based on medical conditions; BOP regulations required inmate to identify grounds for release in request).

Nonetheless, the court ultimately sided with those courts who have held that when a defendant's § 3582(c)(1)(A) request to the warden contains no reference to any medical condition whatsoever, that defendant has not exhausted administrative remedies with respect to medical conditions that form the basis for a motion for compassionate release filed with the court. As the court explained in *Burgoon*:

> BOP regulations require that requests for compassionate release be made in writing and contain, at a minimum, "[t]he extraordinary or compelling circumstances that the inmate believe warrant consideration." *McNair*, 2020 WL 5036201, at *3 (quoting C.F.R. § 571.61(a)(1)). In other words, the regulations require the inmate to identify the compelling reasons justifying release. And where agency regulations require issue exhaustion, "courts reviewing agency action regularly ensure against the bypassing of that requirement by refusing to consider unexhausted issues." *Id.* (quoting *Sims v. Apfel*, 530 U.S. 103, 108 (2000)). It is also clear from the language of the First Step Act that Congress intended the BOP to be able to consider requests for compassionate release in the first instance. *See* § 3582(c)(1)(A) (providing that "the court . . ., upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal . . . may reduce the term of imprisonment).

> The court does not mean to suggest that the exhaustion requirement should be applied "hyper-technically" and it agrees with those courts that have recognized that a request to the warden need not be identical in detail or specificity to the motion made in court. *See United States v. Knight*, 2020 WL 4059886, at *2 (M.D.N.C. July 20, 2020). Indeed, this court's *Rucker* decision makes that plain. But there "must be a reasonable degree of overlap which gives the BOP a fair opportunity to consider whether to make the motion on the defendant's behalf." *See id.* Here, there is simply no overlap at all. Defendant did not identify any medical conditions in her request or suggest in any way that she was particularly at risk of harm or more susceptible to a severe case of COVID-19. Thus, the BOP did not have an opportunity to consider defendant's belief that she "should be released in light of COVID-19 vis-à-vis [her] medical conditions." *United States v. Matulich*, 2020

WL 3260068, at *3 (D. Nev. July 2, 2020).  For these reasons, the court concludes that a defendant who wholly fails to mention any existing medical condition in a request to the warden cannot rely on a medical condition as a grounds for release before the court.  *See United States v. Douglas*, 2020 WL 5816244, at *2 (D.D.C. Sept. 30, 2020) (defendant who did not identify any medical conditions in request to warden could not rely on hypertension as grounds for release in motion to court).

2020 WL 7396914, at *2-3.

The facts of this case fall somewhere between *Burgoon* and *Rucker.*  Here, while defendant did not mention any specific medical conditions, he articulated that he believed he was in a "high risk category" due to his "medical issues."   More importantly, the BOP clearly reviewed defendant's medical situation in responding to his request.  Unlike the situation in *Burgoon*, then, where the BOP did not have an opportunity to consider the defendant's belief that she should be released in light of her medical conditions, the BOP here expressly considered defendant's request in light of his medical conditions.  *Burgoon,* then, is distinguishable.   Because defendant at least relied on his medical condition and the BOP reviewed his condition in addressing the request, the court concludes that defendant has exhausted his administrative remedies.  *See United States v. Clutts*, 2020 WL 6531915, at *4 (N.D. Iowa Nov. 5, 2020) (inmate properly exhausted administrative remedies despite failing to reference hypertension where BOP's response to request expressly indicated that it had reviewed inmate's medical records in connection with the request).  The court turns, then, to the merits of defendant's motion.

*Extraordinary and Compelling Reasons*

Section 3582(c)(1)(A) provides that a court may reduce a term of imprisonment for "extraordinary and compelling reasons." *See id*. The moving defendant bears the burden of

establishing that such a "compassionate release" is warranted under the statute. *See United States v. Jackson*, 2020 WL 2812764, at *2 (D. Kan. May 29, 2020) (Lungstrum, J.) (citing cases). A court exercises its discretion in ruling on such a motion. *See id.* (citing cases).

The applicable statute provides that a court, after considering the applicable Section 3553(a) factors,[1] may reduce a sentence if it finds that extraordinary and compelling reasons warrant the reduction and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *See* 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission, as authorized by 28 U.S.C. § 994(t), has recognized four categories of "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13, comment. n.1. These include the defendant's medical condition, age, family circumstances, and a catch-all, "other reasons." *See United States v. Gieswein*, 832 Fed. Appx. 576, 577 (10th Cir. Jan. 5, 2021).[2]

As noted earlier, defendant argues that extraordinary and compelling reasons for immediate release from prison exist because his medical conditions (psoriasis, ulcerative colitis, early exposure to tuberculosis, and the presence of a VP shunt) create an increased risk of serious harm or death from the ongoing coronavirus pandemic. Significantly, the record reveals that defendant, on November 17, 2020, tested positive for COVID-19. The record indicates that defendant was

---

[1] The court declines to address the § 3553(a) factors in this case because it concludes that defendant has not shown extraordinary and compelling reasons for release.

[2] The court recognizes "that some courts have concluded that passage of the First Step Act has reduced—or even eliminated—the relevance of the Sentencing Commission's policy statement. *See United States v. Pinson*, 2020 WL 7053771, at *3 n.5 (10th Cir. Dec. 2, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *2–3 (D. Me. July 11, 2019) (collecting cases)). The Tenth Circuit has not addressed the issue but "has continued to refer to it in deciding challenges related to § 3582(c)(1)." *See id.* The court need not address this issue because defendant has not identified any factors for release beyond those enumerated by the Sentencing Commission.

"symptomatic" on the evening prior to his test, but that defendant denied any symptoms on the day of his test.  There is no evidence that defendant suffered any serious ill effects as a result of contracting COVID-19 and the record reflects that he recovered without any serious complications.  He asserts that he still experiences shortness of breath and fatigue, but nothing that requires ongoing medical treatment.  Even assuming that defendant could or would contract COVID-19 a second time,[3] there is no reason to believe he would experience an adverse outcome given his experience in November.  *See United States v. Funez*, 2021 WL 168447, at *3 (D. Colo. Jan. 19, 2021) (finding it significant that the defendant had already contracted COVID-19 and recovered without incident); *United States v. Rodriguez-Maciel*, 2021 WL 147985, at *2 (D. Kan. Jan. 15, 2021) (general fear of reinfection not sufficient to warrant compassionate release where defendant recovered from COVID-19); *United States v. Simpson*, 2021 WL 147986, at *2 (D. Kan. Jan. 15, 2021) (same).

And even assuming that he contracted COVID-19 a second time and that the second time has the potential to be more serious, defendant is still not eligible for compassionate release because he has not shown that his particular medical conditions warrant it.  The medical conditions identified by defendant are not recognized risk categories according to the CDC and they are not among the conditions that "might" give rise to an increased risk of complications from the virus.

---

[3] See *Reinfection with COVID-19*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last updated Oct. 27, 2020) (while some reinfections are expected, cases of reinfection with COVID-19 remain rare); *see also United States v. Keys*, 2020 WL 6700412, at *3 (E.D. Cal. Nov. 13, 2020) ("While a CDC representative recently has suggested that based on current evidence reinfections are likely uncommon within 3 months, this observation is not so conclusive so as to provide clarity regarding whether someone who has been infected is immune for any period of time, no matter how brief.").

*See* CDC, *Coronavirus Disease 2019 (COVID-19): People of Any Age with Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed February 10, 2021). The only recent medical records provided to the court indicate that defendant was treated in July 2020 for an "unspecified" respiratory disorder after experiencing shortness of breath and dizziness. He alleges in his submissions that the albuterol prescribed to him has not alleviated his symptoms and that he has been told that these symptoms are consistent with slit ventricle syndrome stemming from the placement of a ventriculoperitoneal shunt when he was 13 months old. But the records do not reflect that he suffers from slit ventricle syndrome or that he has suffered from the primary symptom associated with that syndrome—debilitating headaches. Moreover, he was experiencing these symptoms at the time he contracted COVID-19 and does not appear to have experienced any complications as a result. And despite the presence of his medical conditions, there is simply nothing in the record indicating that those conditions are not well managed in his correctional facility, that he is under constant care for those conditions, or that any aspect of those conditions places him at an increased risk of harm or death from COVID-19. *Compare United States v. Duncan*, 478 F. Supp. 2d 669, 678 (M.D. Tenn. Aug. 12, 2020) (granting compassionate release where defendant had diabetes, hypertension, kidney issues, asthma, and "repeated problems with his shunt") *with United States v. Massey*, 2020 WL 6449318 (S.D. Fla. Nov. 3, 2020) (denying motion for compassionate release where defendant did not show that psoriasis placed him at special risk for COVID-19 and his recovery from COVID-19 infection was "significant because it also demonstrates his ability to tolerate and recover from coronavirus").

8

For the foregoing reasons, defendant has not shown that his medical conditions constitute extraordinary and compelling reasons sufficient for this court to consider early release under the statute.  The motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. 65) is denied.

**IT IS SO ORDERED.**

Dated this 11th  day of February, 2021, at Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge